# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**DYNCORP INTERNATIONAL LLC,**

     **Plaintiff,**

**v.**                                                   **Case No:  6:15-cv-1454-Orl-31GJK**

**AAR AIRLIFT GROUP, INC.,**

     **Defendant.**

## ORDER

This matter comes before the Court after the October 9, 2015 hearing on the Motion for

Preliminary Injunction (Doc. 20) filed by the Plaintiff, Dyncorp International, LLC ("Dyncorp"),

the response in opposition (Doc. 43) filed by the Defendant, AAR Airlift Group, Inc. ("AAR"),

and Dyncorp's reply (Doc. 48).

### I.    Background

On September 4, 2015, Dyncorp filed a verified complaint (Doc. 1) in which it accuses

AAR of misappropriating Dyncorp trade secrets and inducing former Dyncorp employees to

divulge such information in violation of nondisclosure agreements.   Dyncorp and AAR have been

competing for the award of a large[1] federal contract to provide aviation services to the State

Department.  (Doc. 1 at 3).   The program that the aviation services would be supporting is known

as the Worldwide Aviation Support Services ("WASS") program.   Dyncorp has been providing

such services in support of the WASS program under a predecessor contract (the "Incumbent

---

[1] Although no specific figure is provided, Dyncorp asserts in its verified complaint that the
contract is worth "billions of dollars".   (Doc. 1 at 2).

Contract") for more than 20 years.   (Doc. 1 at 4).   However, in January 2015, the State

Department notified Dyncorp that it was being excluded from the competition for the new WASS

program contract.   (Doc. 1 at 4).   Dyncorp protested, and the State Department has agreed to

reevaluate Dyncorp's exclusion.   (Doc. 1 at 4).

According to the verified complaint, in April 2015 Dyncorp learned from a former AAR

employee that AAR had misappropriated Dyncorp trade secrets relating to the WASS program and

used that information to prepare its own bid for the new contract.

> The [t]rade [s]ecrets obtained by AAR included confidential and
> proprietary [Dyncorp] financial and technical data relating to the
> Incumbent Contract, other pricing and financial data about
> [Dyncorp]'s performance on the Incumbent Contract, and technical
> data about DI's staffing approach and business operations.

(Doc. 1 at 5).   Dyncorp contends that AAR obtained this information by hiring former Dyncorp

employees[2] "and pressuring, coercing, unlawfully inducing and otherwise causing these former

[Dyncorp] employees to violate their confidentiality obligations to [Dyncorp] by providing AAR

with the [t]rade [s]ecrets."   (Doc. 1 at 5).   Dyncorp further contends that use of its trade secrets

allowed AAR "to reduc[e] its bid price or costs, and improve[e] its technical proposal by using

[Dyncorp] cost, manpower, technical and schedule information as guidance," and that this

"competitively harmed" Dyncorp's efforts to obtain the new WASS program contract.   (Doc. 1 at

9).[3]

In May 2015, Dyncorp notified the State Department of AAR's alleged misappropriation.

Sometime thereafter, the State Department Inspector General began investigating the allegations.

---

[2] Dyncorp does not identify, even by job description, the former employees hired by AAR, but asserts that there were "at least four" of them.   (Doc. 1 at 7).

[3] According to an affidavit, AAR submitted its bid in October 2014.   Dyncorp suggests that its exclusion made AAR the sole remaining bidder.

On September 4, 2015, Dyncorp filed the instant suit, asserting claims for violations of the Florida Uniform Trade Secrets Act (Count I); conversion (Count II); tortious interference with contractual relations (Count III); tortious interference with business relations (Count IV); aiding and abetting a breach of fiduciary duty (Count V); unjust enrichment (Count VI); conspiracy (Count VII); and violation of Florida's Deceptive and Unfair Trade Practices Act (Count VIII). On September 22, 2015, Dyncorp filed the instant motion for preliminary injunction, in which it seeks an order enjoining AAR "from the use, dissemination, copying, disclosing, distributing, or misappropriation of DI's trade secrets, or of any other documents or data obtained from [Dyncorp] without [Dyncorp]'s express consent or knowledge."  (Doc. 20 at 1).   Dyncorp also requests that AAR be compelled to identify and return all of Dyncorp's confidential and proprietary information within 14 days, and that AAR be required to identify all uses it has made of this information.   (Doc. 20 at 1).

## II.     Legal Standards

In determining whether preliminary injunctive relief is merited, the district court must consider whether the movant has established: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest.  *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005) (citations omitted).

## III.    Analysis

As set forth in the hearing, the Court finds that Dyncorp's motion fails to satisfy even one of the four requirements needed for injunctive relief.

A. Likelihood of success on the merits

Dyncorp has not shown any likelihood of success on the merits. With one exception, Dyncorp offers only amorphous allegations that AAR improperly obtained unspecified "financial and technical data" from an uncertain number of unidentified former Dyncorp employees. These assertions are clearly hearsay and, though presented via a verified complaint, they lack any indication that the person originally relating them to Dyncorp personally witnessed any wrongdoing (or the fruit thereof).

The only item that provides even marginal support for Dyncorp is the undisputed fact that AAR somehow came into possession of a document, known as a "Profit Margin Analysis," that contains extensive financial data relating to Dyncorp's performance of the Incumbent Contract. As described by Dyncorp, the Profit Margin Analysis contains information that could conceivably constitute a trade secret. However, according to the affidavits accompanying AAR's response to this motion, the company did not solicit (or make use of) the document, which was received via email months after AAR submitted its bid for the WASS program contract. Also according to the affidavits (which Dyncorp does not dispute), shortly after its receipt, AAR voluntarily deleted the document from its system and reported it to the State Department. On this record, Dyncorp has not shown any likelihood of success on the merits.

B. Irreparable injury

Dyncorp's case is no stronger with regard to the issue of irreparable injury. Dyncorp admits that it was notified of AAR's alleged misappropriation of trade secrets in April 2015 but let more than four months pass without filing suit. Dyncorp attempts to explain the delay away by arguing that it complained to the State Department and AAR and conducted its own investigation during this time, but offers no explanation as to why those undertakings and this suit could not

proceed simultaneously – particularly if, as Dyncorp asserts, it was facing the prospect of

irreparable injury.

        C.        <u>Threatened injury to movant vs. harm to non-movant</u>

Even assuming *arguendo* that Dyncorp's theory is correct, its secrets were misappropriated

to allow AAR to craft its WASS program contract bid, which was placed almost a year ago.

Dyncorp has not identified any harm that continued possession of its trade secrets is currently

causing it or might cause it in the future.   The best it can do is string together a chain of

suppositions – that the State Department, as a result of its current investigation, might rescind its

exclusion of Dyncorp from bidding on the WASS program contract, and might then require all

bidders (including AAR) to submit new bids.   Such speculation is not enough to demonstrate that

Dyncorp may suffer additional injury unless AAR is immediately compelled to turn over whatever

secrets it might possess.

Moreover, Dyncorp has entirely failed to identify the information that AAR should be

compelled to return to Dyncorp.   Thus, there is no way for the Court to assess whether the harm

to AAR in returning it would be outweighed by whatever injury might be threatening Dyncorp.

D.    Public Interest

As noted at the hearing, it appears to the Court that Dyncorp brought this case primarily to obtain an advantage in the administrative hearings regarding its exclusion from the WASS program contract bidding.   Granting of the injunctive relief sought in this case would reward this behavior and would therefore not be in the public interest.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on October 9, 2015.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party