UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DYNCORP INTERNATIONAL LLC,

      Plaintiff,

v.

AAR AIRLIFT GROUP, INC.,

      Defendant.

Case No. 6:15-cv-1454-Orl-31GJK

**DEFENDANT'S DISPOSITIVE MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(DOC. 52)**

**(AND INCORPORATED
MEMORANDUM OF LAW)**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant AAR Airlift Group, Inc. ("AAR") respectfully requests that the Court dismiss with prejudice the First Amended Complaint ("Amended Complaint") (Doc. 52) of Plaintiff DynCorp International LLC ("DI").

**PRELIMINARY STATEMENT**

DI continues to rely on "amorphous allegations," (Doc. 51 at 4), from an anonymous informant in an attempt "to obtain an advantage in the administrative hearings" in the Department of State. (*Id.* at 6). Like the original Complaint, the Amended Complaint refers to only one document with any specificity. *See* (Doc. 52 ¶¶ 68-90) ("Profit Margin Analysis") (the "PMA"). As this Court found, AAR "did not solicit (or make use of) the document," and "voluntarily deleted the document from its system and reported it to the State Department." (Doc. 51 at 4). AAR's handling of this document demonstrates the company's scruples and diligent efforts to avoid—not misappropriate—DI's trade secrets.

The rest of DI's allegations in the Amended Complaint are conclusory, speculative, and a transparent attempt to use this Court as a "tool" in the State Department proceedings.

(Doc. 54 at 44:12). Revealing its true motives, DI complains that AAR supposedly made a "[m]isleading [d]isclosure *to the State Department*" when reporting the receipt and deletion of the PMA. (Doc. 52 at 17) (alteration in emphasis); *see also* (*id.* ¶¶ 72-90). This allegation is not only contradicted by the declarations on which DI relies, but it is directed towards the wrong forum. DI should not be using this Court as "leverage" to affect agency proceedings. (Doc. 54 at 44:12).

Moreover, in many ways, the Amended Complaint is a step backwards and even more unreliable than the original Complaint. Whereas the original was verified, the Amended Complaint is *un*verified, reflecting that DI's own corporate officer, Mr. Steve Ziarno, no longer has faith in the hearsay allegations reported by an anonymous informant. In addition, the Amended Complaint's list of AAR employees allegedly involved in the misappropriation of trade secrets is different from the list DI provided the Court just last month in a signed declaration. *Compare* (Doc. 52 ¶¶ 40-41) (Randy Martinez; Kyle McGillivray; *Steven Harrison;* Tim Chilviry; *Martin Wax*; James Christian Thomas; Angela Pilkington; and Terrance Fischer), *with* (Doc. 48-1, Ex. A-1 at 1) (Randy Martinez; Tim Chilviry; Kyle McGillivray; James Christian Thomas; Angela Pilkington; *Courtney Edison*; Terrance Fisher; and *Anita Hamilton*). Both lists allegedly came from the same anonymous informant, whose story apparently changed in just over 30 days.

DI's vague, conclusory, and unreliable hearsay allegations are inadequate to state a claim under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, this Court should dismiss with prejudice the Amended Complaint.

## BACKGROUND

### A. THE BIDDING PROCESS.

DI and AAR each bid on a Solicitation, No. SAQMMA14R0319, (the "Solicitation") issued on July 18, 2014, by the State Department's Bureau of International Narcotics and Law Enforcement Affairs, Office of Aviation ("INL/A").   (Doc. 52 ¶ 22).  The Solicitation was for the Worldwide Aviation Support Services ("WASS") program, and in particular, "the provision of aviation and related services in support of counter-narcotics operations and illicit drug eradication efforts in numerous countries around the world." (*Id.* ¶ 23).   DI is the incumbent contractor on the WASS program.  (*Id.* ¶ 26).

In January 2015, the State Department "excluded" DI's proposal "from the . . . Competition" for being outside the competitive range.  (*Id.* ¶ 28).  After DI filed a bid protest with the Government Accountability Office ("GAO"), (*id.* ¶¶ 30-32), the State Department re-evaluated the proposals and reconsidered its competitive range determination.  On October 13, 2015, the State Department informed DI that it had "determined a new competitive range" and that DI's bid proposal was now back in the range.  (*Id.* ¶ 33).  Thus, the new WASS contract has not yet been awarded, and the State Department's evaluation is ongoing. (*Id.* ¶¶ 33-34).

### B. ALLEGATIONS OF TRADE SECRETS AND WRONGDOING.

DI alleges that, "[f]ollowing the State Department's decision to re-evaluate proposals . . . , DI learned that AAR had misappropriated DI's trade secrets and other confidential information relating to the WASS program and used that information in connection with the preparation and submission of its proposal in the WASS Competition." (*Id.* ¶ 36).   DI

supposedly learned of AAR's alleged misappropriation of trade secrets from an anonymous source, "Witness A," whose identity remains undisclosed. (*Id.* ¶¶ 8, 37).

This anonymous source allegedly observed or was aware of former DI employees sharing DI information with AAR. (*Id.* ¶ 44). The Amended Complaint lists former DI employees who were hired by AAR and "had access to confidential and proprietary DI information relating to its performance under the Incumbent Contract," (*id.* ¶ 41), and "senior members of AAR management" who allegedly "were involved in these efforts" to obtain DI information. This list, however, is different from the list of names that DI provided to the Court just last month. *Compare* (*Id.* ¶¶ 40-41), *with* (Doc. 48-1, Ex A-1 at 1) (attachment to reply brief supporting Motion for Preliminary Injunction). DI removed the names of two "former DI employees . . . who provided, or whom AAR requested provide, DI information," (Doc. 48-1. Ex. A-1 at 1) (Courtney Edison and Anita Hamilton), and added two new names of senior managers who were allegedly involved in extracting the DI information, *see* (Doc. 52 ¶ 40) (Steven Harrison and Martin Wax).

The Amended Complaint alleges that two former DI employees (Christian Thomas and Angela Pilkington) provided AAR with confidential DI information, while another employee (Terrance Fisher) refused to do so. *See* (*id.* ¶¶ 41-44). The Amended Complaint describes the allegedly disclosed DI information with broad and vague generalities:

- "financial and technical data relating to the Incumbent Contract, such as lists of the personnel employed by DI to provide services under the Incumbent Contract, the salaries and pay differentials for those personnel on the Incumbent Contract, other pricing and financial data about DI's performance on the Incumbent Contract, and technical data about DI's staffing approach and business operations pertaining to the Incumbent Contract." (*Id.* ¶ 36);

- "personnel lists, salary information (which can show staffing mix and approaches), and other contract and financial data." (*Id.* ¶ 41);

- "proposals, contract modification, spreadsheets showing pricing and other WASS contract and financial information." (*Id.* ¶ 42);

- "financial documents related to the Incumbent Contract including profit and loss statements, disclosures regarding DI's indirect cost pools, and financial information separated by each country in which DI provided services under the Incumbent Contract." (*Id.* ¶ 43);

- "lists of DI employees staffed on DI's Incumbent Contract and their salary information, as well as numerous emails and other documents with DI logos." (*Id.* ¶ 44.a); and

- "confidential financial information relating to DI's incumbent contract costs and pricing." (*Id.* ¶ 44.b).

The only purported trade secret described with any specificity is the PMA, which allegedly is "a detailed spreadsheet that contains . . . trade secrets about DI's quarterly and prior performance on the Incumbent Contract, including staffing, labor, costs, profit margins, overhead, revenue and other financial data." (*Id.* ¶¶ 68-90). Supposedly, "because the PMA . . . includes detailed data about historical performance periods on the Incumbent Contract, this backward-looking information shows DI's performance trends over time, which gives AAR the advantage of seeing the overall performance issues that DI has encountered." (*Id.* ¶ 70). AAR received the PMA *after* submitting its bid, but DI alleges that AAR could conceivably use the PMA in submitting "its best and final proposal." *See* (*id.* ¶ 82) ("no assurances that AAR will not use or be able to use DI's PMA"); *see also* (*id.* ¶ 90) ("AAR can use that information").

This Court previously found that "according to the [declarations] accompanying AAR's response to [DI's preliminary injunction motion], the company did not solicit (or

5

make use of) the [PMA]." (Doc. 51 at 4). Instead, "AAR *voluntarily deleted the document* from its system and reported it to the State Department." (*Id.*) (emphasis added).

Nonetheless, relying on these very same declarations, DI alleges that AAR made a "[m]isleading [d]isclosure *to the State Department*" when reporting the deletion of the PMA. (Doc. 52 at 17) (emphasis added); *see also* (*id.* ¶ 12) ("misleading the State Department as to its purported destruction of the PMA"). DI speculates that the PMA has somehow not been "permanently deleted," and that two AAR employees (Michael Peterson and Rich Walberg) "reviewed the document." (*Id.* ¶¶ 82, 85). To support its assertions, DI cites only the AAR declarations, *see* (*id.* ¶¶ 72-87), which the Court cited in its opinion, *see* (Doc. 51 at 4), and which flatly contradict DI's allegations. Mr. Peterson swore under penalty of perjury that he "permanently" deleted the PMA, (Doc. 43-2 ¶ 8) ("I deleted the Cline email and its attachment permanently from both my computer and the image created by Dieterle"); *see also* (*id.* ¶ 7) ("I deleted Cline's email from my AAR email account"), and that Mr. Walberg "looked briefly at the attachment [the PMA] and immediately instructed [Mr. Peterson] to close the attachment *without reviewing its content*." (*Id.* ¶ 6) (emphasis added); *see also* (*id.* ¶ 3) ("I quickly scanned the attachment" and "immediately closed the email attachment."); (*id.* ¶ 10) ("I do not possess the Cline email or its attachment or any copies thereof, nor do I have any further access to the email or its attachment.").

The remainder of the Amended Complaint's allegations about the use of DI information is conclusory. *See, e.g.*, (Doc. 52, ¶¶ 2, 36, 100). DI vaguely asserts "upon information and belief" that AAR used DI information "in developing its proposal strategy, and identifying and mitigating risk areas in its proposal." (*Id.* ¶ 59); *see also* (*id.* ¶ 60)

("[u]pon information and belief, reducing its bid price or costs, and improving its technical proposal by using DI cost, manpower, technical and schedule information as a template to structure and propose an efficient and effective workforce that will be able to successfully perform the government's requirements").

### C.  PRIOR PROCEEDINGS IN THIS COURT.

DI previously filed a Motion for Expedited Discovery and a Motion for Preliminary Injunction.  (Docs. 20 and 23).  This Court denied the discovery motion the day after it was filed.  (Doc. 24).

The Court held a hearing on the Motion for Preliminary Injunction, and denied the motion from the bench.  (Doc. 54 at 41:13-45:5).  As the Court explained, its "perception" was that DI "is using this litigation as some sort of leverage or tool to enhance its position before the State Department in connection with this bid."  (*Id.* at 44:11-14); *see also* (*id.* at 42:10) (DI does not "know anything of substance or significance").  In a subsequent written order, the Court found that DI's allegations were "amorphous," and held that DI's "motion fails to satisfy even one of the four requirements needed for injunctive relief."  (Doc. 51 at 3, 4).  The Court also stated that "it appears to the Court that [DI] brought this case primarily to obtain an advantage in the administrative hearings regarding its exclusion from the WASS program contract bidding," and that "[g]ranting of the injunctive relief sought in this case would reward this behavior and would therefore not be in the public interest."  (*Id.* at 6). Thereafter, rather than respond to AAR's then-pending Motion to Dismiss the original Complaint, DI filed its Amended Complaint, heaping more speculation and unreliable

hearsay on what even DI obviously recognized was a fatally deficient opening pleading.  *See*

(Doc. 56).

### ARGUMENT

DI's Amended Complaint is legally deficient and should be dismissed with prejudice.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at

678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This standard requires

"more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.*   The

complaint must "allow[] the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Id.*; *see also Suarez v. Sch. Bd.*, No. 8:13-cv-1238, 2014

WL 1946536, at *1 (M.D. Fla. May 14, 2014) ("[C]ourt will not presume the truth of a

complaint's legal conclusions" and "complaint's well-pleaded factual allegations must allow

the court to infer the plausibility, rather than the mere possibility, that the plaintiff is entitled

to the relief sought.") (citing *Iqbal*, 556 U.S. at 678-79).  Applying these principles, the Court

should grant this motion to dismiss.

### I. THE COMPLAINT FAILS TO STATE A CLAIM FOR MISAPPROPRIATION UNDER THE FLORIDA UNIFORM TRADE SECRETS ACT.

To set forth a claim for misappropriation of trade secrets, a plaintiff must establish

that:  "(1) the plaintiff possessed secret information and took reasonable steps to protect its

secrecy and (2) the secret was misappropriated, either by one who knew or had reason to

know that the secret was improperly obtained or by one who used improper means to obtain

it."  *Axiom Worldwide, Inc. v. HTRD Grp. Hong Kong Ltd.*, No. 8:11-cv-1468, 2013 WL

2712787, at *5 (M.D. Fla. June 12, 2013); *see also* FLA. STAT. § 688.002(4) (defining "trade

secret" as "information, including a formula, pattern, compilation, program, device, method, technique, or process that: (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."). Here, the Amended Complaint fails to plausibly allege (1) the existence of a "trade secret" (other than the PMA), or (2) any facts amounting to "misappropriation."

### A. PLAINTIFF FAILS TO ADEQUATELY ALLEGE THE EXISTENCE OF A TRADE SECRET OTHER THAN THE PMA.

This Court has made clear that "'[a] plaintiff has the burden to describe the alleged trade secret with reasonable particularity.'" *Am. Registry, LLC v. Hanaw*, No. 2:13-cv-352, 2013 WL 6332971, at *3 (M.D. Fla. Dec. 5, 2013) (quoting *Treco Int'l S.A. v. Kromka*, 706 F. Supp. 2d 1283, 1286 (S.D. Fla. 2010)). Although the plaintiff "need not disclose secret information in its pleadings," the plaintiff "must identify [the trade secret] with enough specificity as to give defendants notice of what was misappropriated." *Id.* at *4.

"For example, 'software,' 'financial data,' 'lists,' and 'information and records' are broad and generic categories of information and provide insufficient notice as to the actual trade secrets misappropriated." *Id.* Also insufficient are generalized descriptors such as: "customer lists . . . and confidential information about each customer's business, purchase and credit information, sales and operation procedures, software, system architecture, financial data, sales and marketing strategies and data, lists, statistics, programs, research, development, employee, personnel and contractor data." *Id.* at *3 (alteration omitted); *see also Medafor, Inc. v. Starch Med., Inc.*, No. 09-cv-441, 2009 WL 2163580, at *1 (D. Minn.

9

July 16, 2009) ("The complaint describes the trade secrets at issue as 'business methodologies, formulas, devices, and compilations of information, including suppliers and customers . . . .' This description is so broad as to be meaningless." (omission in original) (internal citation omitted)).

Here, with the sole exception of the PMA, DI's allegations about its purported trade secrets remain "amorphous." (Doc. 51 at 4). DI pleads impermissibly broad categories, such as "financial and technical data," "lists of the personnel employed by DI to provide services under the Incumbent Contract," "salaries and pay differentials," "pricing and financial data," "technical data about DI's staffing approach and business operations," and "financial information relating to DI's incumbent contract costs and pricing." (Doc. 52 ¶¶ 36, 39, 41, 44.b). These generic descriptions fail to satisfy Plaintiff's burden "to describe the alleged trade secret with reasonable particularity." *Am. Registry, LLC*, 2013 WL 6332971, at *3-4 (holding that plaintiff's trade secret allegations were "so broad as to be meaningless").

Equally inadequate are DI's allegations that AAR employees possessed "documents with DI logos." Not every document with a "DI logo" constitutes a trade secret or confidential information. Indeed, the State Department's publicly-available Solicitation included documents that bore the "DI logo" (and every page of these documents was even stamped "Confidential and Proprietary Information"). *See* (**Ex. 1**, Declaration of Joel Singer Decl., ¶¶ 2, 3).[1]  DI's allegations are amorphous and rely on unjustifiable inferences from

---

[1] The Court may consider this evidence about the Solicitation because the Amended Complaint expressly refers to the Solicitation, which is central to DI's claims. *See, e.g.*, *Lincoln Gen. Ins. Co. v. Stankunas Concrete, Inc.*, No. 3:10-cv-647, 2011 WL 2893615, at *2 (M.D. Fla. July 20, 2011) ("[A] document referenced in and central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute.").

logos, accordingly, they do not survive *Iqbal*. This alone is sufficient to dismiss the Amended Complaint. *See, e.g.*, *Am. Registry, LLC*, 2013 WL 6332971, at \*4 (dismissing trade misappropriation claim because it failed to "give defendants notice of what was misappropriated"); *see also S. Collision & Restoration, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 6:14-cv-6005, 2015 WL 1911768, at \*1 (M.D. Fla. Apr. 27, 2015) (granting motion to dismiss and rejecting plaintiff's argument that magistrate had applied "impractical pleading standard"). Because DI fails to adequately allege the existence of a trade secret or confidential information, the Court should dismiss the Amended Complaint.

### B. PLAINTIFF FAILS TO ADEQUATELY ALLEGE MISAPPROPRIATION.

The Amended Complaint also fails because DI does not adequately allege misappropriation. To prevail on a trade secrets claim, the plaintiff must allege not just the existence of the trade secret, but its misappropriation. "[A] formulaic recitation of the elements of a cause of action will not suffice to state a claim." *Knights Armament Co. v. Optical Sys. Tech., Inc.* 568 F. Supp. 2d 1369, 1377 (M.D. Fla. 2008). The plaintiff must allege sufficient *"details as to how the [defendant] allegedly used the trade secrets." Id.* (emphasis added); *see also Am. Registry, LLC*, 2013 WL 6332971, at \*2-4 (holding allegations that defendant was "upon information and belief . . . using the confidential information in the operation of [a competitor]" were insufficient).

Here, DI alleges little more than mere "access" to information. *See* (Doc. 52 ¶¶ 7, 39, 41-43, 45). Aside from vague generalities and speculation, *see* (*id.* ¶¶ 2, 36, 59, 60, 82, 90, 100), only once does DI even attempt to demonstrate any misappropriation of a trade secret, and this attempt falls short. DI focuses on the PMA, the only purported trade secret alleged

with any particularity.   But, as this Court found, "according to the [declarations] accompanying AAR's response to this motion, the company did not solicit (or make use of) the document."  (Doc. 51 at 4).  Instead, "AAR voluntarily deleted the document from its system and reported it to the State Department."  (*Id.*).

Citing the same declarations, (Doc. 52 ¶¶ 72-87), and nothing more, DI speculates that AAR may not have permanently deleted the PMA and has already "reviewed the document." (*Id.* ¶¶ 82-84).   But the declarations on which DI relies contradict DI's speculation.  Mr. Peterson stated that he "deleted [the] email and its attachment *permanently* from both [his] computer and the image created by Dieterle [the computer vendor]." (Doc. 43-2 ¶ 8) (emphasis added); *see also* (*id.* ¶ 7) ("I deleted Cline's email from my AAR email account"); (*id.* ¶ 10) ("I do not possess the Cline email or its attachment or any copies thereof, nor do I have any further access to the email or its attachment.").  Mr. Peterson also stated that when he received the PMA, he "quickly scanned" it and "*immediately* closed" it, because he "had concerns that it might be sensitive information."  (*Id.* ¶ 3) (emphasis added). And when he showed the PMA to Mr. Walberg, Mr. Walberg "looked briefly" at it and "*immediately* instructed [Mr. Peterson] to close the attachment *without reviewing its content*."  (*Id.* ¶ 6) (emphasis added).  DI's speculation that Peterson and Walberg might still "use or be able to use" the PMA, (Doc. 52 ¶ 82), is not conceivable, much less plausible.

Compounding this infirmity, the Amended Complaint relies on many other tiers of speculation.  Not only is DI speculating that AAR has maintained access to the PMA (or some other unidentified trade secret), but, in asserting injury, DI further speculates that: (1) AAR will actually use such trade secret in the bid process despite AAR's immediate action to

12

rid itself of the PMA, (2) the State Department will fail to notice such use despite the ongoing investigation by the OIG, and (3) the State Department will then award the WASS contract to AAR.  In short, DI's claim depends on multiple, separate layers of rampant speculation – three of which relate to *future* events, and the failure of any one of which eviscerates the claim.  Such wild conjecture renders the claim and asserted damages implausible, *see Twombly*, 550 U.S. at 555 ("[f]actual allegations must be enough to raise a right to relief above the speculative level."), and also undermines DI's standing to bring this lawsuit, *see, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (explaining that Article III requires that a plaintiff's injury "must be 'likely,' as opposed to merely 'speculative . . . .'"); *Wooden v. Bd. of Regents of the Univ. Sys.*, 247 F.3d 1262, 1274 (11th Cir. 2001) ("[T]he plaintiff must show that it is likely rather than speculative that 'the injury will be redressed by a favorable decision.'" (citing *Lujan*, 504 U.S. at 561)).  DI's "silver bullet" remains in its foot.

These allegations also confirm that DI's true concern pertains to the State Department proceeding.  The heading to this section of the Amended Complaint is "AAR's Misleading Disclosure *to the State Department*."[2]  (Doc. 52 at 17 (emphasis added).  But the agency is fully able to decide for itself whether AAR's disclosure was accurate and whether AAR's bid

---

[2] DI also asserts that AAR "implied" to the State Department that it immediately quarantined the PMA "upon Peterson's receipt of the document."  (Doc. 52 ¶ 81).  In fact, the letter is clear that the immediate quarantining occurred shortly thereafter, once AAR learned about the receipt from Peterson.  *See* (Doc 43-3 at 5) ("Specifically, an employee in our human resources department *told us this morning that he received an email earlier this week* . . . .  We immediately took steps to ensure that neither the recipient of this email nor anyone else at AAR will review this document.") (emphasis added).  In a footnote, DI quibbles that "earlier this week" is inaccurate because of a 10-day gap, (Doc. 52 at 19 n.2), but this triviality is for the Department to consider.

was proper.   DI should not be using this Court as a "tool" to influence improperly those proceedings in Washington.

Because DI fails to allege sufficient facts on trade secret misappropriation, Count I of DI's Amended Complaint should be dismissed.

### C. THE AMENDED COMPLAINT MAKES CLEAR THAT DI'S ALLEGATIONS ARE WHOLLY UNRELIABLE.

In addition, plausibility is assessed by reviewing the complaint as a whole, *see, e.g.*, *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1323 (2011), and there are critical aspects of the Amended Complaint that further undermine its reliability.   First, the core allegations depend on an anonymous informant, who largely relies on hearsay and whose story apparently shifts from one month to the next.   In September 2015, DI presented to the Court several names of people allegedly involved with the purported trade secrets, and the Amended Complaint provides a different set of names, adding two people and removing two. *See supra* at 2.

Second, DI alleges that one AAR employee, Christian Thomas, possessed "a large black, zippered portfolio of written material that he claimed to have taken from DI." (Doc. 52 ¶ 44.a).   Allegedly, "*on one of his first days after joining AAR*," Thomas shared this portfolio "with the AAR bid team charged with preparing AAR's WASS bid submission."   (*Id.*) (emphasis added).   This allegation is nonsensical.   Documents DI attached to its Amended Complaint show that Mr. Thomas left DI for AAR in *August 2012*.   *See* (Doc. 52-1 at 7) ("Certification Upon Termination" executed on August 13, 2012).   The State Department issued the Solicitation for bids two years later, on July 18, 2014.   (Doc. 52 ¶ 22).   It thus strains credulity for DI to claim that Mr. Thomas shared DI documents with the AAR "bid

team" on "one of his first days after joining AAR." In any event, the Amended Complaint never indicates the basis for the anonymous source's "report[] that Thomas was known to have downloaded documents from DI in his last weeks of DI employment before joining AAR," (*Id.* ¶ 44(a)), who "kn[ew]" this information, or how documents that are now more than three-years old could even be useful to AAR.

Third, although a complaint need not be verified to survive a motion to dismiss, it is telling that the senior DI officer who verified the initial complaint did not sign the Amended Complaint. The most likely inference is that he could not verify the allegations added to the Amended Complaint, which depend on an anonymous source whose story changes with the wind and whose account is implausible. Because DI's allegations are implausible and unreliable, the Court should dismiss Count I.

## II.  DI's OTHER COUNTS FAIL TO STATE A PLAUSIBLE CLAIM.

DI's other claims fail for the same reasons. Counts II through VIII are all based on the same flawed allegations discussed above. In Count II, DI alleges that "AAR's actions constitute a knowing, unlawful, and intentional conversion of DI's confidential and proprietary information for AAR's economic benefit, and to the economic detriment of DI." (*Id.* ¶ 112). In Count III, DI alleges that AAR interfered with contractual requirements "not to disclose confidential or proprietary or trade secret information belonging to DI." (*Id.* ¶ 117). In Count IV, DI alleges that AAR "intentionally and improperly interfered with DI's existing and prospective business relationship with [the State Department], including by using DI's confidential and proprietary information to develop its WASS proposal strategy,

identify and mitigate risk areas in its proposal, and obtain an unfair competitive advantage over DI for the WASS Contract." (*Id.* ¶ 126).

In Count V, DI alleges that "AAR induced, encouraged and provided substantial assistance," to former DI employees who breached their fiduciary duties, "by hiring the DI employees and then pressuring them to disclose DI's confidential and proprietary information to AAR." (*Id.* ¶ 136). In Count VI, DI alleges that AAR "used . . . highly sensitive, proprietary and trade secret information in violation of applicable law." (*Id.* ¶ 140). In Count VII, DI alleges that "AAR conspired with others . . . , including the former DI employees from whom AAR obtained DI's confidential and proprietary information, to knowingly, intentionally, and unlawfully solicit, obtain, and use DI confidential and proprietary information in connection with the preparation and submission of its proposal for the WASS Competition." (*Id.* ¶ 146). Finally, in Count VIII, DI alleges that "AAR's use and continued use of DI's confidential and proprietary information constitutes theft and misappropriation under Florida law."

These counts fail for the same reason that DI's Florida Uniform Trade Secrets Act claim fails—they are all based on speculative, conclusory allegations that fail to state a plausible claim for relief. Accordingly, the Court should dismiss these claims as well. *Am. Registry, LLC*, 2013 WL 6332971, at *4 (dismissing "separate causes of action" because the "underlying misconduct" was the same and "the allegations regarding this conduct are inadequate").

In addition, with the exception of Count III (tortuous interference with contractual relations), all of DI's claims are premised on misappropriation of trade secrets and, therefore,

16

preempted by the Florida Uniform Trade Secrets Act (the "FUTSA").   *See* FLA. STAT. §

688.008 (providing that the Florida Uniform Trade Secrets Act "displace[s]" claims based on

trade secret misappropriation, other than contractual claims or claims not based on a trade

secret); *see also Audiology Distrib., LLC v. Simmons*, No. 8:12-cv-2427, 2014 WL 7672536,

at *9 (M.D. Fla. May 27, 2014) ("[O]ther torts involving the same underlying factual

allegations as a claim for trade secret misappropriation will be preempted by FUTSA."); *All

Pro Sports Camp, Inc. v. Walt Disney Co.*, 727 So. 2d 363, 367 (Fla. Dist. Ct. App. 1999)

("Florida's Uniform Trade Secrets Act displaces tort law regarding trade secret

misappropriation."); *New Lenox Indus., Inc. v. Fenton*, 510 F. Supp. 2d 893, 910 (M.D. Fla.

2007) (dismissing unjust enrichment claim because the "claim for unjust enrichment is in fact

preempted by the FUTSA").   Further, Count III fails because there are no allegations that

would establish that Thomas or Pilkington actually breached any obligations owed to DI, and

because the allegation that Thomas "downloaded numerous documents from DI" at the same

time he signed a non-disclosure agreement is implausible (Doc. 52 ¶ 44.a).[3]   Accordingly,

Counts II through VIII of DI's Amended Complaint should also be dismissed.

---

[3] DI's conversion claim, Count II, fails for yet another reason.  "Under Florida law, conversion is an intentional tort consisting of an unauthorized act which deprives another of his property, permanently or for an indefinite time."  *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1143 (M.D. Fla. 2007) (citing *Senfeld v. Bank of Nova Scotia Trust Co. (Cayman)*, 450 So. 2d 1157, 1160-61 (Fla. Dist. Ct. App. 1984)).  The "deprivation" element of a conversion claim precludes any claim based on alleged infringement of intellectual property rights, because the defendant has not deprived plaintiff the use of the property.  *See, e.g., Santilli v. Cardone*, No. 8:07-cv-308, 2008 WL 4534138, at *3 (M.D. Fla. Oct. 7, 2008) (rejecting conversion claim based on copyright infringement).  Here, DI does not allege that it has been deprived of any property; rather, it alleges that it has been "deprived . . . of the benefits of *sole* possession of, DI's confidential and proprietary information."  (Doc. 52 ¶ 110 ) (emphasis added).  As such, DI's cause of action for conversion fails under Florida law.

## CONCLUSION

For all of the foregoing reasons, the Court should grant AAR's motion to dismiss and dismiss with prejudice DI's Amended Complaint (Doc. 52) for failure to state a claim.

Respectfully submitted this 5th day of November, 2015.

/s/ Thomas A. Zehnder
Thomas A. Zehnder
Florida Bar No.: 0063274
Taylor F. Ford
Florida Bar No.: 0041008
KING, BLACKWELL, ZEHNDER & WERMUTH, P.A.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
tzehnder@kbzwlaw.com
fwermuth@kbzwlaw.com
tford@kbzwlaw.com

Robert J. Conlan[*]
Joel Singer[*]
Jonathan Cohn[*]
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711
rconlan@sidley.com
joelsinger@sidley.com
jfcohn@sidley.com

Eric G. Hoffman[*]
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
eric.hoffman@sidley.com

*(Admitted PHV)*

*Counsel for Defendant AAR Airlift Group, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that, on November 5, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Thomas A. Zehnder
Thomas A. Zehnder
Florida Bar No.: 0063274