UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| DynCorp International LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:15CV1454-ORL-31GJK |
| | ) | |
| AAR Airlift Group, Inc., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| | ) | |

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S
### MOTION TO DISMISS FIRST AMENDED COMPLAINT

In its Answer to the First Amended Complaint ("Complaint"), AAR Airlift Group Inc. ("AAR") will be forced to admit what trade secrets and other confidential and proprietary DynCorp International LLC ("DI") information AAR has in its possession (or deny that it has any).  AAR extended its time to make such admissions (or denials) by filing the instant Motion to Dismiss.  AAR argues that DI's Complaint fails to meet the plausibility standard in *Twombly* and *Iqbal* because AAR contends that the ultimate fact-finder should not believe the facts alleged in the Complaint.  While AAR is free to make such credibility arguments to the jury at trial, those arguments have no bearing on the sufficiency of the Complaint as a matter of law.  AAR must answer the allegations in the Complaint.

As to its claim for trade secret misappropriation, DI has identified the trade secrets at issue with ample specificity.  Its secrets include confidential details regarding DI's performance under its current contract (the "Incumbent Contract") with the U.S. Department of State ("State") in support of State's Worldwide Aviation Support Services ("WASS") program.  DI's trade secrets specifically include, among other things, lists of the personnel it uses to staff operations

under the Incumbent Contract and the salaries and benefits that DI pays those personnel.  This data makes up DI's labor rates and pricing – the most proprietary information for a services-related contractor.  DI has named key AAR executives and key former DI employees who conspired to take DI's trade secrets and use them to gain an unfair advantage in bidding against DI for a new WASS-related contract with State.  AAR has admitted that it possessed a DI trade secret related to the WASS Program.  The trade secrets are thus more than sufficiently particularized, and DI has alleged facts supporting each element.

AAR offers no real challenge to the sufficiency of DI's seven other claims, all of which are sufficiently pled and factually supported.  Instead, AAR argues that DI's allegations are not credible and that all but one (DI's claim of tortious interference with contractual relations) are preempted by the Florida Uniform Trade Secrets Act ("FUTSA").  Each of those claims, however, is based on factual allegations related to, but independent of, AAR's misappropriation of DI trade secrets, and thus AAR's cursory preemption challenge should be rejected.

Not only are AAR's attempts to challenge the credibility of DI's allegations improper, its accusation that DI is attempting to use this Court as a "tool" to gain some advantage in the procurement process is baseless and irrelevant.  As detailed in Section 3(b) *infra*, the procurement process and this Court proceeding are independent activities with independent results and there is no interplay between them.  Because DI has sufficiently pled its claims, AAR's Motion should be denied.

## I.      FACTUAL BACKGROUND

DI is a leading provider of essential national security services to the United States Government.  For more than twenty-three years, DI has served as the State's contractor for the WASS program, which requires significant management resources to support operations, maintenance and logistics on multiple continents, often in hostile and austere environments.

(Doc. No. 52 (First Am. Compl.), at ¶¶ 21-27.)  The performance data that DI has compiled during those twenty-three years comprises some of its most important trade secrets, as it provides direct insight into DI's operational and pricing strategies, and thus has significant economic and non-economic value.  (*Id.* at ¶¶ 36, 42-43, 45, 47-48, 54, 58, 70.)  DI's trade secrets are tied specifically to the WASS Contract and include a detailed roadmap of DI's specific historical costs, pricing strategies and technical approaches, including its staffing approach.  (*Id.*)

For highly complex, coordinated, multinational and multi-disciplinary operations, such as those that DI manages, a successful contractor must understand the appropriate staffing mix, levels and experience needed to meet and respond to mission parameters directed by the government, as well as where and how to recruit the right people with the right experience levels for the contract positions.  (*Id.* at ¶ 35.)  DI takes efforts to maintain the secrecy of its trade secrets, including by not intentionally releasing the information to competitors or third parties and requiring its employees to sign confidentiality agreements.  (*Id.* at ¶¶ 49-50.)  As such, DI's Incumbent Contract-related performance data is not publicly known and is not readily ascertainable through proper means by those who can obtain value from it.  (*Id.* at ¶ 52.)

DI and AAR are presently competing for the award of a new WASS contract under Solicitation No. SAQMMA14R0319 ("Solicitation").  (*Id.* at ¶¶ 22-23.)  The parties have been preparing for this Solicitation at all times relevant to this matter.  (*See id.* at ¶ 44 (whistleblower's report that AAR preparation for the Solicitation was underway in 2012.))  As part of its "preparation," AAR hired James Christian Thomas in or around August 2012.  (*See id.* at ¶¶ 38-44; *see also* Doc. No. 52-1 ("Certification Upon Termination"), at 7).  Thomas took confidential DI information regarding DI's performance on the Incumbent Contract to AAR, including a large black, zippered portfolio of written material.  (Doc. No. 52, at ¶ 44.)  In

November 2012, the State Department publicly posted a formal notice of its intent to solicit bids for a new WASS contract.  (*See* Ex. A, "Sources Sought Announcement.")[1]  By December 20, 2012, the State Department had scheduled one-on-one meetings with interested offerors, including a meeting with AAR on January 10, 2013.  (*See* Ex. B, "Vendors Attending Market Research Event" on January 9, 2013.)  In addition, the State Department hosted an industry day for interested offerors on May 22, 2013 and June 20, 2013.  AAR's Senior Vice President of Business Development, Tim Childrey, attended the first industry day and former DI employee Christian Thomas attended the second as a representative for AAR.  (*See* Exs. C and D, respectively, "Industry Day Attendance Lists." )

In an attempt to gain access to confidential and valuable information regarding DI's performance under the Incumbent Contract, AAR deliberately hired away DI employees, including Thomas, Terrance Fisher, and Angela Pilkington, who worked on that program, and persuaded them to disclose DI's trade secrets in violation of their fiduciary and contractual confidentiality obligations to DI.  (Doc. No. 52, at ¶ 7, 36, 39, 45, 48-60, 68, 71, 101, 136-137, 156.)  These employees were specifically targeted by AAR because each had access to valuable DI trade secrets regarding the WASS program.  (*Id.* at ¶¶ 7, 36-41, 45, 136-137, 146-149, 151.) AAR senior leadership, including Randy Martinez (President), Kyle McGillivray (Vice President of Human Resources), Steven Harrison (Vice President of Business Development), Tim Childrey (Senior Vice President) and Martin Wax (Vice President of Logistics), asked these former DI employees to disclose DI trade secrets to AAR.  (*Id.* at ¶¶ 41, 51-56, 61.)  AAR then used the misappropriated information to prepare AAR's bid for the new WASS contract.  (*Id.*)  On at least

---

[1] The information discussed above is contained on a Government publication concerning pending and open solicitations available on the FedBizOps website at https://www.fbo.gov.  The Court can take judicial notice of this information.  *See, e.g.*, *In re Everglades Island Boat Tours, LLC*, 484 F. Supp. 2d 1259, 1261 (M.D. Fla. 2007) (taking judicial notice of pages on Government website).

one occasion, AAR senior leadership was observed reviewing a notebook of misappropriated DI documents.  (*Id.*)

AAR admits that it received other proprietary DI information from DI's subcontractor on the Incumbent Contract.  (*Id.* at ¶¶ 9, 44, 55-56, 68.)  Specifically, on May 4, 2015, the same day that DI informed the State Department of AAR's misappropriation, AAR admitted to the State Department that it possessed a DI trade secret document called a Profit Margin Analysis ("PMA").  (*Id.* at ¶ 64.)  AAR has used, and is continuing to use, DI's confidential information to gain an unfair advantage in the bidding process, thereby causing material harm to DI.  (*Id.* at ¶¶ 36, 59, 91-96, 100, 104, 140-143, 153, 155-156.)

## II.   ARGUMENT

### A.   AAR Wrongly Seeks to Impose a Heightened Pleading Standard Beyond the Requirements of Fed. R. Civ. P. 8

A complaint need only "contain a 'short and plain statement of the claim showing that the pleader is entitled to relief'"; "detailed factual allegations are not required."  *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009) (citing Fed. R. Civ. P. 8(a)(2)); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007) (a "well-pleaded complaint" should provide "enough facts to state a claim that is plausible on its face" and that "raise a reasonable expectation that discovery [would] reveal evidence" for such a claim).  A court assumes the veracity of DI's well-pleaded factual allegations.  *Iqbal*, 556 U.S. at 663-64.

AAR wrongly presumes that DI must prove its case through its Complaint. (*See, e.g.*, Doc. No. 59 (AAR's Motion to Dismiss), at 4, 9-10.)  That is not DI's burden at the pleading stage.  *Romano v. Rambosk*, No. 2:06-cv-375, 2011 WL 43434, at *4 (M.D. Fla. Jan. 6, 2011) (the plaintiff "need not prove his case on the pleadings") (internal quotations omitted); *TMX Funding, Inc. v. Impero Techs., Inc.*, No. 10-cv-00202, 2010 WL 2509979, at *2 (N.D. Cal. June

17, 2010) ("while a claim for the misappropriation of trade secrets must be pled with 'sufficient particularity' the claim is not subject to Fed.R.Civ.P. 9(b)").  Rule 8(a) merely requires that a plaintiff "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Gregus v. Plan 4 College, Inc*., No. 8:09–cv–01392, 2009 WL 3064664, at *1 (M.D. Fla. Sept. 18, 2009); *see also Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A*., 781 F.3d 1245, 1260-61 (11th Cir. 2015).  In its Motion, AAR draws improper inferences and cites facts not in evidence.  But the Court must accept all DI's pleaded facts as true.  Under *Twombly/Iqbal*, DI's detailed Complaint – which names key individuals who conspired to acquire specified categories of DI trade secrets related to the WASS contract – has satisfied its burden.

### B.    AAR's Challenges to the Credibility of DI's Allegations and DI's Purported Motives in Bringing Suit Are Irrelevant and Meritless

Rule 12(b)(6) assesses the legal feasibility of the complaint, not the weight of the evidence which might be offered in support thereof.  *Larach v. Standard Chartered Bank Int'l (Americas) Ltd.*, 724 F. Supp. 2d 1228, 1239 (S.D. Fla. 2010) (denying motion to dismiss as defendant's arguments were "based on fact-intensive inquiries that are inappropriate for consideration at this stage in the litigation").  Thus, a court does not evaluate the credibility of a complaint's factual allegations on a motion to dismiss.  *See Traffic Jam Events, LLC v. Cortes*, No. 6:09-cv-146, 2009 WL 1043977, at *2 (M.D. Fla. Apr. 17, 2009) (credibility is not considered on a motion to dismiss) (citing *Kovacs v. Nat'l Hebrew Glatt, Inc.,* No. 05-cv-23125, 2008 WL 4621756, at *2 (S.D. Fla. Oct. 17, 2008) (denying motion to dismiss where the court would have "to make credibility findings and impermissibly weigh the evidence")).

AAR nevertheless has moved to dismiss DI's Complaint based on various challenges to the credibility of DI's allegations, rather than their pleading sufficiency.  Its arguments are improper at the pleading stage, and meritless in any event for at least the following reasons:

First, the fact that DI's Complaint does not name the former AAR employee who revealed AAR's misconduct does not turn that individual into an "anonymous" source whose information can now be ignored.  DI has alleged the individual's position at AAR and the reasons why that person was in a position to report what (s)he reported.  (Doc. No. 52, at ¶¶ 8, 37-38, 44).  The individual's name is irrelevant to the sufficiency of DI's pleading.  *See Eastman Chem. Co. v. AlphaPet Inc.*, No. 09-cv-971, 2011 WL 5402767, at *7 (D. Del. Nov. 4, 2011) ("[e]ven if Defendants have to engage in an inferential step to determine the identities of the former employees in question, that would not be grounds to dismiss the Amended Complaint according to *Twombly*") *report and recommendation adopted*, No. 09-cv-971, 2011 WL 6148637 (D. Del. Dec. 9, 2011).[2]

Second, the fact that DI's Complaint is based in part on hearsay is equally irrelevant. Pleadings based on hearsay are routine.  *See, e.g., Pronman v. Styles*, No. 12-cv-80674, 2013 WL 3894978, at *3 (S.D. Fla. July 26, 2013) ("hearsay is a rule of evidence, not applicable to a pleading.  Whether Plaintiffs can prove the allegations with admissible evidence … need not be resolved at this stage of the proceeding"); *Campanella v. Cnty. of Monroe*, 853 F. Supp. 2d 364, 378 (W.D.N.Y. 2012) (holding a court is not barred from considering hearsay allegations, and noting "[n]either *Twombly* nor *Iqbal* altered the rule that a plaintiff need not plead specific, admissible evidence in support of a claim...").

Third, DI need not verify its Complaint. (*See* Doc. No. 59, at 15.)  DI did so in order to cite its original complaint as evidence in support of its preliminary injunction motion.  *Cf. U.S. ex rel Vargas v. Lackman Food Serv., Inc.*, 510 F. Supp. 2d 957, 965 (M.D. Fla. 2007) ("a verified complaint is considered evidence").  With no preliminary injunction motion pending,

---

[2] The Amended Complaint made clear that the name would be made available to AAR in discovery.  (Doc. No. 52, at ¶¶ 8, n.1).  Consistent with that, DI provided Witness A's name to AAR in its initial disclosures, which DI served on November 20, 2015.

there is no reason for DI to verify its Complaint and its decision not to do so has no bearing on the sufficiency of its allegations.  Essentially, AAR asks the Court to draw the inference that, because the original Complaint was verified and the Amended Complaint was not, the latter should not be believed.  But all inferences must be drawn in favor of DI – not AAR.

Fourth, the fact that the individuals DI identified in its Complaint overlap with, but do not exactly replicate, the individuals named in private pre-suit correspondence to AAR has no bearing on whether DI has adequately pled its claims. *Smith v. McNeil*, No. 408-cv-321, 2009 WL 2460751, at *2 (N.D. Fla. Aug. 10, 2009) (on a motion to dismiss, a "court should not weigh the evidence, but merely determine whether the complaint itself is legally sufficient") (internal quotations omitted).  If AAR wishes to explore the reasons for any perceived differences in the parties' pre-suit correspondence and DI's Complaint, it may do so in discovery.[3]

Fifth, AAR's repeated citations to the Court's Order denying DI's motion for preliminary injunction are inapposite.  A ruling on a motion for preliminary injunction is not law of the case. *See, e.g., In re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1549 (11th Cir. 1990) ("an order granting a preliminary injunction [is] not to be a final judgment on the merits"); *Florida Clean Water Network, Inc. v. Grosskruger,* No. 3:08-CV-120-J-32TEM, 2008 WL 435156, at *1 (M.D. Fla. Feb. 14, 2008) ("remind[ing]" the parties that an order denying a motion for preliminary injunction is "not a final judgment as to the ultimate merits of this case").  The question of whether DI has sufficiently pled its claims is entirely different from the higher standard and evidentiary issues presented in a request for injunctive relief.  *See, e.g., Pershing LLC v. Curi*, No. 12-cv-62449, 2013 WL 2304189, at *1 (S.D. Fla. May 24, 2013) (the "denial of preliminary injunctive relief does not dictate dismissal of the entire case"); *see also Reid v. Florida*, No. 07-

---

[3] The document that AAR cites as being purportedly inconsistent with DI's Complaint was merely a pre-suit letter to AAR.  It is not a pleading and is not inconsistent with the Complaint. (Doc. No. 52, at ¶¶ 40-41.)

cv-21764,2008 WL 2780991, at *1 (S.D. Fla. July 16, 2008) ("[T]he threshold standard for a plaintiff's complaint to survive a motion to dismiss is 'exceedingly low'") (quoting *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700 (11th Cir. 1985)); *compare* (Doc. No. 43 (AAR's Opposition to the Motion for Preliminary Injunction), at 8) (stating that a "preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the burden of persuasion as to the four requisites"). DI has no such heightened burden here.

Finally, AAR's speculation regarding DI's motives in bringing suit is irrelevant. AAR argues that DI is somehow attempting to use this civil suit to gain advantage in the pending bidding process for the new WASS contract. The fact that DI is bidding against AAR for the new WASS contract does not bar it from seeking civil relief for AAR's misappropriation of its confidential information and interference with the confidentiality obligations owed to DI by its former employees. DI is entitled to seek relief for AAR's misconduct, and this Court is the only forum in which it may do so. As described in Plaintiff's Opposition to Defendant's Motion to Stay, filed contemporaneously herewith, the proceedings in this Court and the State Department investigation differ in all respects, including the parties, the relief available and the subject matter heard by the tribunal:

| **Litigation in Federal Court** | **State Department Procurement Process** |
|---|---|
| Parties: Hears disputes between private parties. | Parties: State, GAO and Court of Federal Claims hear disputes between contractors and the federal agencies related to the procurement process, but not private disputes between participants in the procurement process. |
| Monetary Damages: Court can award monetary damages to compensate for tort and contract claims. | Monetary Damages: In the procurement process an award can cover only bid preparation costs related to a bid protest. |

| | |
|---|---|
| Final Injunctive Relief: Is available to compel the return of information held by AAR. | Final Injunctive Relief: No injunctive relief is available in the procurement process. |
| Subject Matter: Addresses civil claims and intentional torts. | Subject Matter: Addresses only impropriety in the bidding process. |

Even if these distinctions did not exist, the sufficiency of a complaint is unrelated to a plaintiff's reasons for suing, and AAR's attempts to question DI's motives are irrelevant.

### C.   DI Has Properly Pled Each of Its Claims

Apart from its procedurally irrelevant credibility challenges, AAR has little to say about the sufficiency of DI's pleading.  In fact, DI has amply pled each of its claims.

#### 1.   DI Has Properly Pled Trade Secret Misappropriation (Count I)

There is no heightened pleading requirement under FUTSA.  A plaintiff need allege only that it "owned valuable trade secrets, its trade secrets were misappropriated, and [defendant] is responsible for such misappropriation."  *GlobalOptions Servs., Inc. v. N. Am. Training Grp., Inc.*, No. 6:14-cv-2048, 2015 WL 5474328, at *5 (M.D. Fla. Aug. 19, 2015).  Here, DI has made precise, detailed allegations that DI possessed information that constitutes valuable DI trade secrets, that DI took reasonable measures to keep that information confidential, and that AAR misappropriated the trade secrets both in its campaign to hire and induce former DI employees to disclose the trade secrets, and in its use of the trade secrets to prepare AAR's own proposal for the next WASS contract.  (Doc. No. 52, at ¶¶ 36, 48-60, 68, 71, 101.)

##### a.   DI Has Pled the Existence of Its Trade Secrets with Reasonable Particularity

A party proceeding under FUTSA "need only describe the misappropriated trade secrets with 'reasonable particularity.'"  *Treco Int'l S.A. v. Kromka*, 706 F. Supp. 2d 1283, 1286 (S.D. Fla. 2010).  Here, DI identifies two different categories of trade secret information that were misappropriated by AAR:  (1) the PMA, which AAR concedes has been pled with particularity

(Doc. No. 59, at 5); and (2) other trade secret information pertaining to DI's performance on the Incumbent Contract in connection with the WASS program.

AAR has carefully avoided making any representation as to whether it is in possession of DI trade secrets other than the PMA.  However, even assuming AAR misappropriated only the PMA and no other trade secrets, that is sufficient to state a claim.  Fla. Stat. 688.002(2) (defining misappropriation).  DI need not take AAR at its word that it destroyed and made no use of the PMA, nor must DI come forward with evidence to refute this claim in its pleadings.  Indeed, AAR's statements do not exclude the probability that the PMA is still in AAR's possession, or that other AAR employees accessed it.  (*See* Doc. No. 52, at ¶¶ 68, 72-89).[4]  AAR cannot simply rely on this Court's preliminary determination, based on AAR's untested declarations, that AAR did not "solicit" or "make use of" the PMA, as the Court's Order on DI's motion for preliminary injunction is not a final judgment on the merits.  *See, e.g., In re Justice Oaks II, Ltd.,* 898 F.2d at 1549.  The PMA is a defined trade secret that AAR admits to having possessed.  AAR does not address the allegations in the Complaint that the PMA was not properly deleted by AAR and remains in AAR's possession and, thus, even just as to the PMA, DI's has successfully pleaded its misappropriation claim.

DI has also stated a claim for misappropriation concerning its other trade secrets.  The trade secrets alleged are narrowly tied to the Incumbent Contract and, therefore, are pled sufficiently.  (Doc. No. 52, at ¶¶ 36, 42-43, 45, 47-48, 54, 58, 70.)  *See GlobalOptions Servs., Inc.*, 2015 WL 5474328, at *5-6 (holding that plaintiff had sufficiently pled its misappropriation claim because it tied the allegations of trade secrets to a service agreement and a course of dealing between the parties, which "lends support to the idea that the copyrighted works

---

[4] The fact that AAR misled the State Department about the PMA is not alleged, as AAR suggests, as a basis for damages, but rather to show that AAR should not be taken at its word (and rebut AAR's claim that its disclosure to the State Department demonstrates AAR's "scruples").  All reasonable inferences must be drawn in favor of DI.

[plaintiff] seeks to protect are sufficiently identified to satisfy the pleading standard of [Rule] 8"); *see also NPA Assocs., LLC v. Lakeside Portfolio Mgmt., LLC*, No. 12-cv-23930, 2014 WL 714812, at *3 (S.D. Fla. Feb. 22, 2014) (pleading was sufficient because it alleged that the information "related to the mortgages" at issue); *Eastman Chem. Co.*, 2011 WL 5402767, at *5-6 (rejecting argument by defendant that alleged trade secrets could be "literally anything" because the complaint identified the specific product to which the allegedly misappropriated trade secrets pertained). There is no requirement to allege at the pleading stage the specific documents that AAR misappropriated; on the contrary, it is often the case that the plaintiff in a trade secret misappropriation case cannot know exactly what was taken until it takes discovery of the defendant. *See, e.g., Treco Int'l S.A.*, 706 F. Supp. 2d at 1286 (finding plaintiff described its trade secrets with "reasonable particularity" where the information was alleged to relate to a specific computer network, noting plaintiff need not plead the exact misappropriated information as it "is of the type normally resolved by a factfinder after a full presentation of evidence").

DI's Complaint thus is distinguished from the cases cited by AAR. In *Am. Registry, LLC v. Hanaw*, No. 2:13-cv-352, 2013 WL 6332971 (M.D. Fla. 2013), for example, the plaintiff merely alleged that its trade secrets comprised broad categories of information, such as "software" and "financial data," not tied to any contract or product. The court concluded that such generic category descriptions did not inform the defendants as to "what they supposedly misappropriated." *Am. Registry, LLC,* 2013 WL 6332971 at *3-4. Similarly, in *Medafor, Inc. v. Starch Med. Inc.*, No. 09-cv-0441, 2009 WL 2163580, at *1 (D. Minn. Jul. 16, 2009), "[t]he complaint describe[d] the trade secrets at issue as 'business methodologies, formulas, devices, and compilations of information.'" *Id.* at *1. The *Medafor* complaint provided no guidance as to the nature of the alleged trade secrets, again leaving the defendant to guess at which of the

scores of the plaintiff's unidentified "methodologies" and "compilations of information" was alleged to have been misappropriated.  *Id.*  By contrast, DI has described its trade secrets using specific references to the Incumbent Contract as well as multiple AAR employees involved in the misappropriation.  Such allegations are not broad categories in a vacuum and, therefore, fully meet the requirement that DI plead its trade secrets with reasonable particularity.

DI has also alleged, and AAR does not refute, that it adequately sought to protect the confidentiality of its trade secret information through the use of confidentiality and nondisclosure agreements.  *See Johnson Controls, Inc. v. Rumore,* No. 8:07-cv-1808, 2008 WL 203575, at *5 (M.D. Fla. Jan. 23, 2008) (plaintiff "exercises measures to protect the confidentiality of [its] business information, including its utilization of nondisclosure…covenants"); *Merrill Lynch v. Silcox,* No. 01-cv-8800, 2001 WL 1200656, at *5 (S.D. Fla. Oct. 4, 2001).

This Court need not, and should not, determine at the pleading stage whether the information that DI contends to be a trade secret is, in fact, a trade secret.  Indeed, in a previous case, an AAR affiliate argued unsuccessfully for such a preliminary determination.[5]  *See AAR Mfg. Inc. v. Matrix Composites Inc.*, No. 5D11-3802, 98 So.3d 186, 188 (Fla. DCA 5th 2012) (declining to make a threshold finding as to the existence of the trade secret in misappropriation cases and holding there is no such requirement); *see also Furmanite America, Inc. v. T.D. Williamson, Inc*., 506 F. Supp. 2d 1134, 1141 (M.D. Fla. 2007) (finding a "full presentation of evidence from each side" was required to determine whether the information constituted a trade secret); *Allegiance Healthcare Corp. v. Coleman*, 232 F. Supp. 2d 1329, 1335 (S.D. Fla. 2002).

---

[5] Additionally, DI does not have to show AAR made use of the PMA (or any of its trade secrets) to state a claim for misappropriation.  *See, e.g.*, Fla. Stat. 688.002(2) (definition of misappropriation does not require use; "Misappropriation means: (a) ***Acquisition of a trade secret*** of another by a person who knows or has reason to know that the trade secret was acquired by improper means; ***or*** (b) ***Disclosure or use*** of a trade secret of another without express or implied consent…") (emphasis added); *Eastman Chem. Co.* 2011 WL 5402767, at *4 (finding under DUTSA "misappropriation can occur in several alternative ways—namely, *via* acquisition, disclosure, and/or use").

### b.       DI Has Pled AAR's Misappropriation of Its Trade Secrets

DI has pled who at AAR misappropriated DI's trade secrets and how AAR did it, including the specific identification of key AAR executives and former DI employees involved in the scheme.  (Doc. No. 52, at ¶¶ 40, 51, 54, 56, 61.)  DI has also alleged that AAR used the information it wrongly obtained to prepare its own bid to compete against DI for the new WASS contract.  *Id.*  This is more than sufficiently plausible.  *See Palm Beach Golf Center Boca, Inc*, 781 F.3d at 1260-61.

### c.       DI's   Allegations   Meet   the   Plausibility   Standard   of *Twombly/Iqbal*

AAR challenges the plausibility of DI's trade secret misappropriation allegations on the grounds that AAR hired Christian Thomas away from DI in 2012, two years before the State Department published its formal Solicitation for bids for a new WASS contract.  (*See* Doc. No. 59, at 14-15.)   However, the State Department published a notice of its intent to solicit in November 2012, and began setting up one-on-one meetings with interested offerors, mere months after Thomas was hired by AAR.  *See* Exs. A-D.  As alleged, the WASS program is a complex and challenging contract requiring vast expertise, experience and resources.  (Doc. No. 52, at ¶¶ 24-25).  Therefore, the timing of Christian Thomas' departure for AAR – at a time when AAR and other competitors were actively anticipating an announcement from State regarding a new WASS contract – renders DI's allegations more plausible, not less.

### D.       DI Has Pled All of Its Remaining Claims Properly

AAR summarily argues that DI's remaining claims should be dismissed because they are based on the same allegations as DI's trade secret misappropriation claim – allegations that AAR wrongly characterizes as "speculative and conclusory." (Doc. No. 59, at 16-17.)  AAR does not point to any purported deficiency in the pleading of any of those claims.  There are none.

### 1.      DI Has Pled Conversion Properly (Count II)

Conversion occurs when a defendant wrongfully asserts an act of dominion over plaintiff's property which is inconsistent with plaintiff's ownership interest therein.  *See Seymour v. Adams*, 638 So. 2d 1044, 1047 (Fla. Dist. Ct. App. 1994).  Here, DI has alleged that AAR wrongfully took possession of confidential DI information, which deprived DI of its right to exclusive possession of that confidential information and inherently made that information less valuable.  (*See, e.g.*, Doc. No. 52, at ¶¶ 36, 59, 100, 104, 140, 153, 155-156.)  DI has thus properly pled a claim for conversion.  *See, e.g., TMX Funding, Inc.*, 2010 WL 2509979, at *6 (finding in the context of conversion that "[i]t would be a curious jurisprudence that turned on the existence of a paper document rather than an electronic one"); *Freeman v. Corbin*, 391 So.2d 731, 732 (Fla. 3d DCA 1980) (holding that "[a]ctions for conversion may properly be brought for a wrongful taking over intangible interests in a business venture").[6]

### 2.      DI Has Pled Tortious Interference with Contractual Relations and with Existing and Prospective Business Relations Properly (Counts III and IV)

To state a claim for tortious interference with contractual relations, DI need only allege: (1) the existence of a contract between the plaintiff and a third person; (2) knowledge of the contract by the defendant; (3) intentional, improper interference with performance of the contract; and (4) injury to the plaintiff as a result of the breach of contract.  *United Subcontractors, Inc. v. Godwin*, No. 11-81329-CV, 2012 WL 1587943, at *2 (S.D. Fla. May 4, 2012).  The elements of tortious interference with prospective business relations are the same, except that the first element is replaced by the existence of a business relationship that need not necessarily be evidenced by an enforceable contract.  *Fastway Moving & Storage, Inc. v. Ugarte*,

---

[6] To the extent that AAR argues (wrongly) that DI must plead conversion of tangible property (Doc. No. 59, at 17, n.3), DI has done so by alleging the conversion of, among other things, its PMA and the black binder that Christian Thomas took from DI.  (Doc. No. 52, at ¶¶ 9, 4, 56.)

No. 13-cv-60832, 2013 WL 3927687, at *2 (S.D. Fla. July 29, 2013) (citations omitted); *see also, e.g., Gregg v. U.S. Indus., Inc.*, 887 F.2d 1462, 1473 (11th Cir. 1989).

Here, DI has alleged that AAR knew DI's former employees owed DI contractual duties of confidentiality, but nevertheless intentionally and improperly induced them to breach those obligations.  (*See* Doc. No. 52, at ¶¶ 51, 61, 118, 126.)  Such allegations properly state a claim for tortious interference with contract.  *See, e.g., Stoneworks, Inc. v. Empire Marble & Granite, Inc.*, No. 98-cv-2017, 1998 WL 998962, at *5 (S.D. Fla. Nov. 20, 1998) ("[Defendant's] hiring of [plaintiff's former employee] and use of [plaintiff's] trade secrets satisfy the [elements of tortious interference]").  Because it engaged in such misconduct in order to gain an unfair competitive advantage over DI – its sole competitor in the new WASS contract procurement process and the incumbent State contractor (*see* Doc. No. 52, at ¶¶ 51, 61, 118, 126) – AAR also engaged in tortious interference with business relationships.  *See Azar v. Lehigh Corp.*, 364 So.2d 860, 862 (Fla. 2nd DCA 1978).

### 3.    DI Has Pled Aiding and Abetting Breach of Fiduciary Duty Properly (Count V)

To state a claim for aiding and abetting breach of fiduciary duty, DI must allege: (1) a fiduciary duty on the part of the primary wrongdoer; (2) a breach of this fiduciary duty; (3) knowledge of the breach by the alleged aider and abettor; and (4) the aider and abettor's substantial assistance or encouragement of the wrongdoing.  *See AmeriFirst Bank v. Bomar*, 757 F. Supp. 1365, 1380 (S.D. Fla. 1991).  Here, DI has alleged that its employees signed non-disclosure agreements pursuant to which an improper disclosure of DI's trade secrets or other confidential or proprietary information would constitute a breach of the employee's contractual obligations to DI.  (*See* Doc. No. 52, at ¶ 52.)  Under Florida law, an employee owes a fiduciary duty to his or her employer where an agreement prohibits that employee from exposing or using

confidential information.  *See Sensormatic Elecs. Corp. v. TAG Co. US, LLC*, 632 F. Supp. 2d 1147, 1190-91 (S.D. Fla. 2008).   DI has further alleged that AAR knew of the former DI employees' confidentiality obligations and induced DI's former employees to breach them.  (*See, e.g.*, Doc. No. 52, at ¶¶ 7, 39, 45, 136-137, 156.)  *See Southeastern Mech. Servs., Inc. v. Brody,* No. 8:08-cv-1151, 2008 WL 4613046, at *12 (M.D. Fla. Oct. 15, 2008) ("[g]iven the emphasis the executives…placed on obtaining [plaintiff's] information it is reasonable to infer that defendants believed this information was confidential and proprietary").   DI has also pled that the actions taken by AAR, including pressuring DI employees to provide confidential information, provided substantial assistance to DI's employees.  (Doc. No. 52, at ¶¶ 7, 39, 45, 136-137, 156).  DI has thus stated a claim for aiding and abetting breach of fiduciary duty.

### 4.      DI Has Pled Unjust Enrichment Properly (Count VI)

DI has pled that: (1) DI conferred a benefit upon AAR (albeit inadvertently) through the disclosure of its highly valuable confidential information; (2) AAR appreciated that benefit; and (3) AAR's acceptance and retention of the benefit is inequitable.  *(See, e.g.,* Doc. No. 52, at ¶¶ 36, 59, 100, 104, 140-144, 153, 155-156).  *See also Mobil Oil Corp. v. Dade County Esoil Mgt. Co.,* 982 F. Supp. 873, 880 n.4 (S.D. Fla. 1997).   The fact that DI may still be in possession of the information is irrelevant as the value of the information taken by AAR is in its secrecy and exclusive possession and use.  *Southeastern Mech. Servs., Inc.*, 2008 WL 4613046, at * 12 (finding defendant's use of plaintiff's trade secrets gave it a "competitive advantage in bidding on [the] same type of work.").   DI is harmed by AAR's use of and benefit from its confidential information not only on bidding for a new WASS contract, but also by the lost goodwill value of its proprietary information and the resulting loss of competitive advantage on future procurements.  As such, DI has adequately pled that AAR has been unjustly enriched as a result of its possession and use of DI trade secret and other confidential and proprietary information.

### 5. DI Has Pled Conspiracy Properly (Count VII)

DI has pled: (1) the existence of a conspiracy between AAR and DI's former employees to take confidential information from DI and use that information for AAR's benefit; (2) the performance of unlawful acts in furtherance of that conspiracy (including Christian Thomas' downloading of information from DI before his departure); (3) that AAR used the misappropriated DI information in structuring its bid to the Government; and (4) that DI has suffered damages as a result.  (Doc. No. 52, at ¶¶ 7, 36-41, 45, 136-137, 146-149.)  Thus, DI adequately has pled that AAR and DI's former employees entered into a common scheme to deceive DI by using the confidential information to benefit AAR.  *See Microsoft Corp. v. Big Boy Distribution LLC*, 589 F. Supp. 2d 1308, 1322 (S.D. Fla. 2008) (setting forth elements of conspiracy claim); *see also Dozier & Gay Paint Co. v. Dilley*, 518 So. 2d 946 (Fla. Dist. Ct. App. 1988) (finding on summary judgment that defendants could be found liable for civil conspiracy based on evidence that they aided and encouraged employees of another company to leave that company and go into business with them).

### 6. DI Has Pled Its Claim for Violation of the Florida Deceptive and Unfair Trade Practices Act Properly (Count VIII)

To state a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), DI need only plead "a deceptive act, causation and damages."  *Sundance Apartments I, Inc. v. General Elec. Capital Corp.,* 581 F. Supp. 2d 1215, 1221 (S.D. Fla. 2008). A deceptive and unfair practice is "one that offends established public policy" and is "immoral, unethical, oppressive, [or] unscrupulous[.]"  *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003).  Here, DI has pled that AAR engaged in unfair and deceptive acts by improperly obtaining confidential DI information and using that information in a way that was damaging to DI.  (Doc. No. 52, at ¶¶ 122-126, 151-159.)  Thus, DI has stated a claim for

violation of FDUTPA. *See Sensormatic Elec. Corp.*, 632 F. Supp. 2d at 1185-86 (finding that requesting and receiving trade secrets from someone with nondisclosure obligations is "improper means"); *Furmanite Am., Inc.*, 506 F. Supp. 2d at 1146-47 (finding defendant's alleged plan to hire plaintiff's employees and use them to misappropriate plaintiff's trade secrets would constitute unfair or deceptive practices); *see also Sundance Apartments I, Inc.*, 581 F. Supp. 2d at 1222 (finding it was sufficient to allege a party directly participated in a violation of FDUTPA, "even if that violation was initiated by another").

### E. DI's Claims Are Not Preempted by FUTSA

AAR admits that DI's claim for tortious interference with contract is not preempted by FUTSA (Doc. No. 59, at 16), but argues that DI's other claims are. That argument is inconsistent with its contention that the information it obtained from DI does not constitute trade secrets (Doc. No. 59, at 9-10), and also ignores that DI's common law claims can be pled in the alternative. *See Vacation Club Servs., Inc. v. Rodriguez*, No. 6:10-cv-247, 2010 WL 1645129, at *2 (M.D. Fla. Apr. 22, 2010) (allowing trade secret misappropriation and conversion to be argued in the alternative pending trade secret determination); *Fordham v. Onesoft Corp.*, No. 00-cv-1078, 2001 WL 641759 (E.D. Va., Jan. 24, 2001) (finding that summary judgment motion seeking dismissal of quantum meruit claim as duplicative of Virginia's UTSA was premature). "Preempting plaintiff's [additional tort] claim[s] at the motion to dismiss stage risks leaving the claimant [ ] without a remedy for information he proves has been stolen." *Cenveo Corp. v. Slater*, No. 06-cv-2632, 2007 WL 527720, at *3 (E.D. Pa. Feb. 12, 2007).

Moreover, FUTSA's preemption provision does not affect "[o]ther civil remedies that are not based upon misappropriation of a trade secret." Fla. Stat. § 688.008(2)(b); *Alphamed Pharm. Corp. v. Arriva Pharm., Inc.*, 391 F. Supp. 2d 1148, 1167 (S.D. Fla. 2005) (FUTSA did not preempt unfair competition claim); *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390

F. Supp. 2d 1170, 1181 (M.D. Fla. 2005) (finding while allegations related to the misappropriation of trade secrets, the claims for FDUPTA, fraud and negligent misrepresentation were materially distinct from FUTSA claim and were not preempted); *Allegiance Healthcare Corp.*, 232 F. Supp. 2d at 1336 (claim is preempted only when "allegations of trade secret misappropriation alone comprise the underlying wrong").

Each of DI's state law claims requires additional and different facts beyond AAR's misappropriation of trade secrets, including issues pertaining to other confidential DI information, AAR's deceptive practices, and breach of industry-specific fiduciary, contractual and employer/employee duties. *See* Sections D(1)-(6) *supra* (discussing elements of proof for each claim). As such, the claims are not preempted because AAR's misappropriation alone does not comprise the entirety of the underlying wrongdoing. *See Audiology Distrib'n, LLC v. Simmons*, No. 8:12-cv-02427, 2014 WL 7672536, at *10 (M.D. Fla. May 27, 2014); *Mortgage Now, Inc. v. Stone*, No. 3:09-cv-80, 2009 WL 4262877, at *7 (N.D. Fla. Nov. 24, 2009).

AAR relies upon *All Pro Sports Camp, Inc. v. Walt Disney Co.*, 727 So. 2d 363, 367 (Fla. Dist. Ct. App. 1999), a case involving alleged preemption under the federal copyright laws, for the proposition that DI's claims are preempted; however, that court reversed dismissal of seven of the eight original claims relating to misappropriation. 727 So. 2d at 368. In doing so, the court stated that the state law claims all required proof of extra elements in lieu of or in addition to acts constituting copyright infringement, and as such, could not be preempted. *Id.* As set forth above, DI's common law claims do not depend on a finding that it has protectable trade secrets, because DI seeks recovery for a broader range of unfair practices.

## III.   CONCLUSION

For the foregoing reasons, DI respectfully requests that this Court deny AAR's Motion to Dismiss.

Respectfully submitted,

_/s/ Tracy Zurzolo Quinn_
Keith J. Hesse
Florida Bar No. 348007
Nicole R. Turcotte
Florida Bar No. 102886
**Shuffield, Lowman & Wilson, P.A.**
1000 Legion Place, Suite 1700
P.O. Box 1010
Orlando, FL  32802-1010
Telephone: (407) 581-9800
Facsimile: (407) 581-9801
Email:  khesse@shuffieldlowman.com
          nturcotte@shuffieldlowman.com
          litservice@shuffieldlowman.com

**REED SMITH LLP**
A. Scott Bolden (Lead Trial Counsel)*
Lawrence P. Block*
1301 K Street, N.W.
Suite 1100 – East Tower
Washington, D.C. 20005
Tel: (202) 414-9266
Fax: (202) 414-9299
ABolden@reedsmith.com
LBlock@reedsmith.com

Tracy Zurzolo Quinn*
Matthew P. Frederick*
1717 Arch Street, Suite 3100
Philadelphia, PA  19103
Tel:  (215) 851-8100
Fax:  (215) 851-1420
TQuinn@reedsmith.com
MFrederick@reedsmith.com

_Attorneys for Plaintiff_
_DynCorp International LLC_

_*Admitted Pro Hac Vice_                Dated: November 23, 2015

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically provide email notification thereof to all attorneys of record.

/s/ *Tracy Zurzolo Quinn*
Tracy Zurzolo Quinn