# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**DYNCORP INTERNATIONAL LLC,**

    **Plaintiff,**

**v.**                                                                 **Case No:   6:15-cv-1454-Orl-31GJK**

**AAR AIRLIFT GROUP, INC.,**

    **Defendant.**

## AMENDED ORDER[1]

This matter comes before the Court without a hearing on the Motion to Dismiss (Doc. 59) filed by the Defendant, AAR Airlift Group, Inc. ("AAR"), the response in opposition (Doc. 63) filed by the Plaintiff, Dyncorp International LLC ("Dyncorp"), and the reply (Doc. 70) filed by AAR.

### I.  Background

According to the allegations of the First Amended Complaint (Doc. 52), which are accepted in pertinent part as true for purposes of resolving the instant motion, Dyncorp and AAR are competing for a multi-billion dollar contract to provide aviation and related services in support of counter-narcotics operations for the United States Department of State.  The State Department program at issue is known as the Worldwide Aviation Support Services ("WASS") program; accordingly, this opinion will refer to the contract over which the parties are competing as the "WASS Contract".

---

[1] Amended to correct scrivener's error.

Dyncorp has performed the original WASS Contract – henceforth, the "Incumbent Contract" – for more than 20 years. On July 18, 2014, the State Department issued a solicitation for new contractors to fulfill the WASS Contract. In response, both Dyncorp and AAR submitted bids. In January 2015, the State Department excluded Dyncorp from the WASS Contract competition. Dyncorp filed a protest and, in March 2015, the State Department opted to reconsider Dyncorp's exclusion. In October 2015, the State Department rescinded the exclusion. According to Dyncorp, this will result in the State Department soliciting new bids from itself and from AAR.

On April 27, 2015, a former manager in the AAR Human Resources department (henceforth, the "Whistleblower") notified Dyncorp that AAR had misappropriated trade secrets and other confidential information relating to Dyncorp's performance of the Incumbent Contract and had used that information to prepare its bid for the WASS Contract. The Whistleblower said AAR had hired at least two Dyncorp managers who had access to "confidential and proprietary" information relating to the Incumbent Contract – including "personnel lists, salary information (which can show staffing mix and approaches), and other contract and financial data" – and had induced those former Dyncorp employees to disclose confidential information to their new employer. (Doc. 52 at 9). The Whistleblower said all of this occurred "in the 2012-2014 time frame". (Doc. 52 at 10).

On May 4, 2015, Dyncorp filed a protest with the State Department regarding AAR's conduct. That same week, AAR notified the State Department that it was in possession of a Dyncorp document known as a Profit Margin Analysis ("PMA"), a spreadsheet containing

> nearly 10,000 rows of confidential data, contains trade secrets about [Dyncorp]'s quarterly and prior performance on the Incumbent Contract, including staffing, labor, costs, profit margins, overhead, revenue and other financial data, and provides direct insight into


[Dyncorp]'s operations and pricing strategies on the Incumbent Contract. The PMA provides detailed information about [Dyncorp]'s current operational, staffing, and pricing approaches

(Doc. 52 at 17).

On September 4, 2015, Dyncorp initiated the instant suit, filing its complaint (Doc. 1) and, shortly thereafter, a motion seeking a preliminary injunction (Doc. 20). On October 9, 2015, after a hearing, the Court denied the motion, finding *inter alia*, that with one exception, Dyncorp had offered only "amorphous allegations that AAR improperly obtained unspecified 'financial and technical data' from an uncertain number of unidentified former Dyncorp employees. (Doc. 51 at 4). As for the one exception – the allegations regarding the PMA – AAR presented evidence that the document had not been solicited by AAR, had been received months after AAR submitted its bid on the WASS Contract, and had been voluntarily deleted from AAR's system shortly after its receipt. (Doc. 52 at 4).

On October 19, 2015, Dyncorp filed its Amended Complaint (Doc. 52), asserting the following claims against Dyncorp: violation of the Florida Uniform Trade Secrets Act (Count I); conversion (Count II); tortious interference with contractual relations (Count III); tortious interference with business relations (Count IV); aiding and abetting a breach of fiduciary duty (Count V); unjust enrichment (Count VI); conspiracy (Count VII); and violation of Florida's Deceptive and Unfair and Trade Practices Act (Count VIII). By way of the instant motion, AAR seeks dismissal of all eight counts.

**II.     Legal Standards**

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to give the defendant fair notice of what the claim is and the grounds upon which it rests, *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544,

127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).   A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milbum v. United States*, 734 F.2d 762, 765 (11th Cir.1984).   In ruling on a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff.   *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988).   The Court must also limit its consideration to the pleadings and any exhibits attached thereto.   Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1966, and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir.2007).   Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal.   *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.   A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. at 1949 (internal citations and quotations omitted).   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the plaintiff is entitled to relief.'"   *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

**III.     Analysis**

**Count I – Florida Uniform Trade Secrets Act**

The elements of a claim under the Florida Uniform Trade Secrets Act, Fla. Stat. §§ 688.01 *et seq.* ("FUTSA"), are: (1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy and (2) the secret it possessed was misappropriated. *Del Monte Fresh Produce Co. v. Dole Food Co.*, 136 F.Supp.2d 1271, 1291 (S.D.Fla. 2001); Fla. Stat. § 688.002.  A plaintiff has the burden of describing the alleged trade secret with reasonable particularity. *See, e.g.*, *Treco Intern. S.A. v. Kromka*, 706 F.Supp.2d 1283, 1286 (S.D.Fla. 2007).  The plaintiff also bears the burden of demonstrating the specific information it seeks to protect is a trade secret. *American Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998).  Under Florida law, whether a particular type of information constitutes a trade secret is a question of fact. *Kromka* at 1287.

As set forth in the Amended Complaint, Dyncorp contends that AAR "misappropriated DI's trade secrets and other confidential information relating to the WASS program and used that information in connection with the preparation and submission of its proposal in the WASS Competition".  (Doc. 52 at 8).  However, the Amended Complaint is nearly as devoid of details regarding those allegedly misappropriated trade secrets as the original pleading.  Dyncorp does assert that some of the "trade secrets obtained by [AAR]" included:

> confidential and proprietary [Dyncorp] financial and technical data relating to the Incumbent Contract, such as lists of the personnel employed by [Dyncorp] to provide services under the Incumbent Contract, the salaries and pay differentials for those personnel on the Incumbent Contract, other pricing and financial data about [Dyncorp]'s performance on the Incumbent Contract, and technical data about [Dyncorp]'s staffing approach and business operations pertaining to the Incumbent Contract.

(Doc. 52 at 8-9).  However, this is an assertion regarding information *obtained* by AAR, which would include the PMA, rather than information *misappropriated* by AAR.

The FUTSA defines "misappropriation" as

> (a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (b) Disclosure or use of a trade secret of another without express or implied consent by a person who:
>
>> 1. Used improper means to acquire knowledge of the trade secret; or
>>
>> 2. At the time of disclosure or use, knew or had reason to know that her or his knowledge of the trade secret was:
>>
>>> a. Derived from or through a person who had utilized improper means to acquire it;
>>>
>>> b. Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>>>
>>> c. Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>>
>> 3. Before a material change of her or his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Fla. Stat. § 688.002(2).

Dyncorp has not alleged that the PMA was misappropriated. Instead, Dyncorp alleges that in April 2015, an employee of one of its subcontractors – without solicitation or explanation – emailed the PMA to an AAR subcontractor, who subsequently showed it to one of the higher-ups at AAR. (Doc. 52 at 17-18). AAR contends that, after determining that the PMA was confidential Dyncorp information, the company had the document deleted from its computers and notified the State Department. Although Dyncorp suggests, in its pleading, that it does not believe AAR's assertions regarding the disposition of the PMA, the Amended Complaint does not contain an affirmative allegation that AAR has disclosed or used that document, so as to constitute "misappropriation" under Fla. Stat. § 688.02(2). Accordingly, in determining whether Dyncorp has described the allegedly misappropriated trade secrets with reasonable particularity, the Court

- 6 -

cannot consider descriptions of the PMA.  This would apply to the paragraph quoted above regarding the "trade secrets obtained by AAR," which appears to describe the PMA, both based on its content[2] and on the use of the word "obtained" rather than "misappropriated".

---

[2] The Amended Complaint describes the PMA as follows:

> The PMA, a detailed spreadsheet that contains approximately twenty discrete tabs, and collectively consists of nearly 10,000 rows of confidential data, contains trade secrets about [Dyncorp]'s quarterly and prior performance on the Incumbent Contract, including staffing, labor, costs, profit margins, overhead, revenue and other financial data, and provides direct insight into [Dyncorp]'s operations and pricing strategies on the Incumbent Contract. The PMA provides detailed information about [Dyncorp]'s current operational, staffing, and pricing approaches.
>
> For example, the PMA contains detailed income statements showing DI's direct and indirect costs, gross profit from operations, general and administrative expenses, and unallowable costs on the Incumbent Contract. Moreover, because the PMA also includes detailed data about historical performance periods on the Incumbent Contract, this backward-looking information shows [Dyncorp]'s performance trends over time, which gives AAR the advantage of seeing the overall performance issues that DI has encountered over time. This allows AAR to structure a comprehensive and flexible operational approach that it would not otherwise be able to prepare.

(Doc. 52 at 17).  This description matches up with the description of the "trade secrets obtained by AAR":

> confidential and proprietary [Dyncorp] financial and technical data relating to the Incumbent Contract, such as lists of the personnel employed by [Dyncorp] to provide services under the Incumbent Contract, the salaries and pay differentials for those personnel on the Incumbent Contract, other pricing and financial data about [Dyncorp]'s performance on the Incumbent Contract, and technical data about [Dyncorp]'s staffing approach and business operations pertaining to the Incumbent Contract.

(Doc. 52 at 8-9).

The Amended Complaint does contain some allegations as to the information allegedly misappropriated by AAR, but those allegations are extremely vague. Dyncorp alleges that AAR hired former Dyncorp employees who had access to a variety of Dyncorp's confidential information, but its whistleblower – identified only as "Witness A" – is unable to identify any of that information as having been passed along to AAR. Witness A is alleged to have seen one of the former employees in possession of a portfolio of information from Dyncorp, which he shared with AAR management, but Witness A provides no specifics as to what that information was. (Doc. 52 at 10-11). Another former Dyncorp employee is alleged to have provided "confidential financial information relating to [Dyncorp]'s incumbent contract costs and pricing," Doc. 52 at 11, but again no specifics are provided. Finally, Dyncorp alleges that AAR management sought confidential information from a third ex-Dyncorp employee but were rebuffed. (Doc. 52 at 11).

This is not enough. Because Dyncorp has failed to identify the allegedly misappropriated trade secrets with reasonable particularity, it has failed to state a claim under FUTSA. Count I will be dismissed without prejudice. As the remaining counts are all predicated on the same inadequately identified trade secrets, they will also be dismissed.[3] *See*, *e.g.*, *American Registry, LLC v. Hanaw*, 2013 WL 6332971, at *4 (M.D.Fla. Dec. 5, 2013) (dismissing FDUTPA and tortious interference claims based on failure to adequately plead trade secrets claim).

In consideration of the foregoing, it is hereby

---

[3] FUTSA preempts "conflicting tort, restitutory, and other law[s] of this state providing civil remedies for misappropriation of a trade secret." Fla. Stat. § 688.008(1). This would appear to foreclose most if not all of Dyncorp's remaining claims. *See, e.g.*, *New Lenox Industries, Inc. v. Fenton*, 510 F.Supp.2d 893, 910 (M.D.Fla. 2007) (dismissing, as preempted, unjust enrichment claim based on trade secret misappropriation). However, as the FUTSA claim is being dismissed, the Court will not address preemption at this time.

**ORDERED** that the Motion to Dismiss (Doc. 59) is **GRANTED IN PART**, and the Amended Complaint (Doc. 52) is **DISMISSED WITHOUT PREJUDICE**.   Dyncorp may file a second amended complaint on or before January 29, 2016.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on January 14, 2016.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party